*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                     )
CHRISTIAN URIEL MONGE                ) Civil Action No.: 09-4949-FLW-LHG
                                     )
            Petitioner,              ) **OPINION**
v.                                   )
                                     )
ERIC H. HOLDER, Attorney General,    )
*et. al.*,                           )
                                     )
            Respondents.             )
_____

**WOLFSON, District Judge.**

Presently before the Court is a Petition by Christian Uriel Monge ("Mr. Monge" or "Petitioner") for *de novo* judicial review, pursuant to section 310(c), 8 U.S.C. § 1421(c) of the Immigration and Nationality Act ("INA"), of the denial of his July 15, 2009 administrative appeal for naturalization by the United States Bureau of Citizenship and Immigration Services ("USBCIS"), an agency of the United States Department of Homeland Security ("DHS"). Petitioner, who is a lawful permanent resident ("LPR") of the United States, alleges that his application for naturalization was improperly denied. Respondents Eric H. Holder, John Thompson, and the DHS (collectively, "Respondents") have filed a motion to dismiss the Petition, or alternatively, a motion for summary judgment, arguing that Petitioner cannot allege that he was lawfully admitted to the United States under 8 U.S.C. § 1429 because he was granted LPR status by mistake.

For the reasons set forth below, Respondents' motion to dismiss is granted.

**I.    BACKGROUND**

Mr. Monge is a native and citizen of Costa Rica. *See* Resp't's Ex. A. Mr. Monge married Zeneida Gonzalez ("Ms. Gonzalez"), a U.S. citizen, on January 28, 1995. *See* Resp't's Ex. B. He entered the U.S. in July 1995 with a visitor visa. *See* Resp't's Ex. A. In or around September 1996, Ms. Gonzalez filed a Form I-130, Petition for Alien Relative, on behalf of Petitioner, asking the Immigration and Naturalization Service to confirm that the two had a spousal relationship.[1] *See id.* Around the same time, Petitioner also filed an I-485 Application for Adjustment of Status ("I-485 Application") to become a LPR of the United States. *See* Resp't's Ex. C at ¶ 2. He was interviewed on or about November 14, 1996, in connection with his applications. *See id.* at ¶ 3. In December 1996, before his I-485 Application was approved and an I-551 (Alien Registration Card) was issued affirming that Petitioner was a LPR of the United States, Petitioner departed the United States to bury his father in Costa Rica. *See* Pet'r's Resp. Br. at 8. Petitioner did not receive advance parole to leave the United States while his I-485 Application was pending. *See* Resp't's Ex. C at ¶ 5. Petitioner claims that he left the United States with an INS stamp on his passport, and that this stamp showed that his LPR status had been approved. *See id.* at ¶ 3; Pet'r's Resp. Br. at 3. Respondents contend that "the stamp merely indicate[d] that [Petitioner's] I-485 Application remained pending, not that it had been approved." *See* Resp't's Br. at 7.

Upon his return from Costa Rica, on or about January 16, 1997, Petitioner attempted to apply for admission as a LPR even though his LPR status had not yet been approved. *See* Resp't's Ex. D. He was then placed in exclusion proceedings as an immigrant without a proper immigrant visa. *See* Resp't's Ex. E. On February 5, 1997, a DHS adjudications officer approved

---

[1] In 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions were transferred to divisions of the DHS, including the USBCIS. *See* Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 (2002). Because events relevant to the present case took place before and after the change, the INS and USBCIS will be referred to as the DHS.

Petitioner's I-485 Application without knowledge of Petitioner's departure from the United States. *See* Resp't's Ex. C at ¶ 4. The immigration judge thus terminated Petitioner's exclusion proceedings on September 3, 1997. *See* Resp't's Ex. E. As a result of his I-485 Application being approved, Mr. Monge became a LPR of the United States. *See* Resp't's Reply Br. at 4.

On or around July 9, 2007, Petitioner filed a Form N-400, Application for Naturalization, pursuant to § 316 of the INA, 8 U.S.C. § 1427. *See* Resp't's Ex. C at ¶ 5. On March 10, 2008, the DHS conducted an examination of Petitioner under oath in connection with his N-400 Application. *See* Resp't's Ex. F. On or around February 10, 2009, the DHS denied his application for naturalization. *See id*. The DHS explained the requirements for eligibility for naturalization under INA § 316, and concluded:

> You departed the U.S. while your [I-485 Application] was pending and returned to the U.S. on January 16, 1997. Since you were not granted advance parole prior to your departure, your [I-485 Application] was abandoned. Therefore, that application was granted in error on February 5, 1997, and you have not been lawfully admitted to the United States for permanent residence. Your application is denied under the above section of law.

*Id*. Petitioner then sought administrative review of the denial and filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. *See* Pet'r's Pet. For Review at ¶ 10; *see also* Resp't's Br. at 3. Following an interview, the denial of Petitioner's naturalization application was upheld. *See id*.

On September 24, 2009, Petitioner filed the present Complaint in the U.S. District Court for the District of New Jersey, seeking *de novo* review of his application for naturalization. *See* Pet'r's Pet. For Review at ¶ 1. On June 1, 2010, Respondents requested that the complaint be dismissed because Petitioner failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, that the Court grant summary judgment because there are no material facts in dispute and Petitioner's claim fails as a matter of law under Rule 56 of

3

the Federal Rules of Civil Procedure.  Resp't's Br. at 1.  Due to Third Circuit caselaw, even though Respondents contend that Mr. Monge was improperly granted LPR status, Respondents do not seek to rescind Mr. Monge's LPR status or remove him from the United States.  *See* Resp't's Reply Br. at 4.  Rather, Respondents seek to ensure that his application for naturalization is not approved.

## II.  DISCUSSION

### A.  Jurisdiction

The Court has jurisdiction pursuant to 8 U.S.C. § 1421(c), which permits an applicant seeking to become a naturalized citizen to appeal the denial of his application by the DHS to the district court for the district in which he resides.  Section 1421(c) provides for the Court, in accordance with the Administrative Procedures Act, to conduct a *de novo* review of the denial of Petitioner's application for naturalization.  8 U.S.C. § 1421(c).  Venue is proper because Petitioner claims he resides in this district, and Respondents have not disputed this fact.

### B.  Standard of Review Under Rule 12(b)(6)[2]

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008) (citation and quotations omitted).  In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts

---

[2]  Because the Court is granting Respondents' motion to dismiss, the summary judgment standard will not be discussed.

in support of his claim which would entitle him to relief." *Id. at 561* (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id. at 555*.  As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest 'the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element'." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

    **C.**    **Merits**

Respondents seek dismissal or summary judgment on the basis that Petitioner was never *lawfully* admitted to the United States because he abandoned his I-485 Application when he left the country without receiving advance parole.  Resp't's Br. at 8-9.  Petitioner disagrees with

5

Respondents' assertions. Petitioner contends that his complaint states a claim upon which it is sufficiently plausible that relief will be granted, and that genuine issues of material fact exist as to whether or not his LPR status, which cannot be rescinded, makes him eligible for naturalization. *See* Pet'r's Resp. Br. at 6-7. In this regard, Petitioner claims that he was lawfully admitted as a LPR to the United States when he left for Costa Rica, that he did not intend to abandon his residence in the United States or his I-485 Application by leaving the United States, and that Respondents were required to bring an action seeking to rescind his LPR status within five years. *Id*. at 7-10. Petitioner also contends that "[e]quity dictates that Mr. Monge should not be prejudiced by the actions of the Service in the processing of his application," because "[w]ere it not for careless errors of the Service," Mr. Monge would have either had his I-485 Application approved or would have had the opportunity to re-file his I-485 Application. *Id*. at 10. For the reasons stated within, Petitioner's three arguments fail as a matter of a law and his action is thereby dismissed.

The Supreme Court has held that, "[t]here must be strict compliance with all congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). 8 U.S.C. § 1429 provides that "... no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." The burden of proof is on that person to show that he entered the United States legally. *Id*. Congress has defined 'lawfully admitted for permanent residence' to mean, "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, *such status not having changed*." *See* 8 U.S.C. § 1101(a)(20) (emphasis added).

6

To be 'lawfully admitted for permanent residence,' an individual's admission must be both procedurally and substantively proper. *See Moore v. Thompson*, No. 09-1747, 2010 WL 398633, *6 (D.N.J. Jan. 27, 2010) (citing *Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983), *cert. denied*, 467 U.S. 1219 (1984)); *see also United States v. Koreh*, 59 F.3d 431 (3d. Cir. 1995) (upholding denaturalization because individual did not fall within criteria required by the statute his visa was issued pursuant to, and thus he was not eligible for the visa when he entered the U.S.). In *Moore*, a court in this district held that, where the petitioner became a LPR by virtue of supposedly being married to a U.S. citizen, the fact that the marriage was actually void due to bigamy dictated that the petitioner "did not obtain [LPR] status in [a] substantively proper way and … thus [he had] not met the requirements for naturalization." *Id*. at *8. The *Moore* court, in rejecting the petitioner's request that the court find the voided marriage sufficient, noted "this Court does not have the authority to apply equitable remedies here [and] [c]itizenship can only be obtained through compliance with the immigration laws, and compliance must be strict." *Id*.

If an I-485 Applicant seeking LPR status wishes to travel outside the United States, 8 C.F.R. § 245.2(a)(4)(ii) controls the steps that the applicant must take to preserve his application. The statute provides in part:

> … the departure [from the United States] of an applicant who is not under exclusion, deportation, or removal proceedings *shall* be deemed an abandonment of the application constituting grounds for termination of any pending application for adjustment of status, unless the applicant was previously granted advance parole by the Service for such absences…

(emphasis added). *See Niang v. Gonzales*, 492 F.3d 505, 519 n. 7 (4th Cir. 2007); *Kwai Fun Wong v. U.S.*, 373 F.3d 952, 958 (9th Cir. 2004). Previously, this regulation provided that an unauthorized departure would not necessarily result in the termination of an application if it was

"determined by the officer having jurisdiction over [the applicant's] application that his departure was unintended and casual, that the absence was brief, and that he was inspected upon his return." *See Le v. Waters*, 863 F. Supp. 1104, 1107 (N.D. Cal. 1994) (citations omitted). This language was eliminated in 1986. *Id*. According to the Federal Register, the purpose of the change was to "eliminate[] the language concerning unintended or innocent and casual departure[,] [and as a result of the change] [a]ny departure without prior permission (advance parole) will terminate the adjustment application." *Id*. (*citing* 51 Fed. Reg. 7431 (Mar. 4, 1986)).

The *Le* court, faced with two petitioners who were found to have abandoned their applications for LPR status because they left the United States without being granted advance parole, interpreted § 245.2(a)(4)(ii) in light of its legislative history and found that the regulation "mandates that certain procedural requirements must be met, *i.e.*, that applicants cannot leave the country pending approval without advance authorization." *Id*. at 1105, 1107-08. Thus, the court agreed with the BIA's finding that there existed "no authority to support the argument that an abandoned application can be granted," and denied petitioners' writ. *Id*. at 1107; *see also Wong v. Beebe*, 2007 WL 1170621, *3 n.6 (D. Or. April 10, 2007) (when alien departed the United States without advance parole while her adjustment of status application was pending, it "necessitated the refilling of [the alien's] I-485 petition."), *rev'd on other grounds*, No. 07-35426, 2010 WL 2231985 (9th Cir. 2010).

Here, Petitioner attempts to dispose of the significance of Mr. Monge's impermissible trip outside of the United States by claiming that the stamp placed upon his passport when he left the United States for Costa Rica showed that his LPR status had been approved. Pet'r's Resp. Br. at 3. However, Petitioner's own brief states that he was admitted as a LPR on or about February 5, 1997, which was after he had returned to the country. *Id*. at 8. Additionally, as

Respondents point out, "the fact that [Mr. Monge] was placed into exclusion proceedings upon his return to the United States, negates [his] faulty assertion that he was a [LPR] before he departed the United States…" Resp't's Reply Br. at 3 n.4.  Petitioner's claim that he was unable to obtain advance parole due to the emergency nature of his departure is worthy of sympathy, but the language of § 245.2(a)(4)(ii) makes it clear that any departure from the United States during an application for re-adjustment *shall* be seen as an abandonment of the application, equitable considerations notwithstanding.

Petitioner's next contention, that he never intended to abandon his I-485 Application, is similarly unavailing.  The *Le* court specifically addressed the same argument, which the court described as "half-hearted," and disposed of it in a footnote by noting "…the regulations explicitly state that an application will be deemed 'abandoned' upon the applicant's unauthorized departure from the country." 863 F. Supp at 1107 n.2.  Here, the same result, *albeit* harsh, follows.

Petitioner also erroneously argues that, even if he was not lawfully admitted as a LPR due to a mistake by the DHS, this does not constitute ineligibility to naturalize because Respondents failed to rescind his LPR status within a five (5) year window under INA § 246(a), 8 U.S.C. § 1256(a) (1970), *amended by* 8 U.S.C. § 1256(a) (Supp. 1996); *see also Garcia v. AG of the United States*, 553 F.3d 724 (3d Cir. 2009) (holding that five year limitation period bars both rescission and deportation actions arising from an erroneous grant of status).  The fatal flaw in Petitioner's argument, as pointed out by Respondents, is that "[Respondents] do not seek to rescind [Petitioner's LPR] status or remove him from the United States[,]" and even if Petitioner's present complaint is dismissed, "[Petitioner] will continue to benefit from the improper grant of his [LPR] status." Resp't's Reply Br. at 4.  Because the government seeks

neither to rescind Petitioner's LPR status nor remove him from the country, 8 U.S.C. § 1256(a) does not apply in this case.

Petitioner last argues that "[e]quity dictates that Mr. Monge should not be prejudiced by the actions of the Service in the processing of his application." Pet'r's Resp. Br. at 10. Petitioner points out that the DHS was aware that he'd left the United States when he was in Costa Rica, and he contends that, but for the Service's "careless errors," he would have had the opportunity to have his I-485 Application properly approved, whether in its original form or after re-filing. *Id*. Mr. Monge urges this court to stop Respondents from "constructively revok[ing] his LPR status[.]" *Id*.

Like in *Moore*, in which a court in this district refused to find the petitioner's voided marriage sufficient for the purpose of her naturalization application, this Court must decline to apply the equitable remedy encouraged by Petitioner. As the *Moore* court made clear, "[c]itizenship can only be obtained through compliance with the immigration laws, and compliance must be strict. Simply put, a reviewing court lacks discretion to consider equity in reviewing an application for naturalization." 2010 WL 398633 at *8 (internal citations omitted). More importantly, the Supreme Court has explicitly held that "courts lack equitable authority to order the naturalization of persons who did not satisfy the statutory requirements for naturalization." Tuan Anh Nguyen v. I.N.S., 533 U.S. 53, 95 (2001) (citing INS v. Pangilinan, 486 U.S. 875, 833-35 (1988)). Here, Petitioner has failed to meet the statutory requirements for naturalization because of his impermissible trip outside the United States while his I-485 Application was still pending. In light of the failure of his other arguments, this Court has no option but to grant the Respondents' motion to dismiss.

### III.   CONCLUSION

Based on the foregoing, Respondents' motion to dismiss Mr. Monge's Petition is granted. An order will be entered consistent with this Opinion.

     /s / Freda L. Wolfson_____
FREDA L. WOLFSON, U.S.D.J

Dated:   September 28, 2010